Thank you, Your Honor. May it please the Court, Counsel. My name is Brian Fay, and I represent the defendant, Joseph Dean Lira. It is our contention that the District Court erred when it applied the discharge enhancement, and because it was really the District Court had to speculate as to what factors the jury used to find the conviction under 924C. I should mention off the bat here that we are all aware of the case of Allain v. United States, on which the Supreme Court had just granted certiorari on the 5th of this month, taking the issue of United States v. Harris into account. Our view as a panel is that there are other issues involved here as well, but we want you to be aware of the fact that we are aware that Harris, which is the underpinning of a good part of what we're talking about here, is under consideration by the Supreme Court, and I assume we'll have an answer by the end of the year. We're going to withhold submission of the case at the end of argument pending the outcome of the Supreme Court case. I want you to be aware of that, but we will, of course, retain like a steel trap everything else that you have said that relates to this case. So please go ahead with that background in mind. Well, you know, I don't have a lot to add to my brief, so if the panel has questions for me, I will try to answer them. Well, the district judge, Judge Thiebel, clearly relied on, I forgot which count, on one of the counts, right, in determining that a firearm was discharged, right? Yeah, it was clear that a firearm was discharged. But the count he relied on was the count, what was the fellow's name? Is it Bosick or Bossick? Bossick. Ray Bossick. Bossick, right? Raymond Bossick. It was a count in which the defendant shot at Bossick, right? That's a count that Judge Thiebel relied on in imposing the enhancement, right? He was pretty clear about that. Now, what you're saying is you really can't tell from the record which count the jury relied on. Isn't that the basis of your argument here? Well, I'm having a hard time with the word count because it's count four, which is very  No, no, no, I mean, no, no, not just, I'm not talking about, I'm talking about the underlying count in which the gun was, you know, it had to be in relation to a drug crime, right? Correct. So it had to relate to one of the other two underlying counts, right? Count four, the count four charge necessarily relied on something that occurred in counts, one of the other counts, right? One, two or three. Right. And you can't tell from the, your argument is that you can't tell from the verdict which one of those counts count four relied on, or the jury relied on in reaching the guilty verdict in count four. Isn't that your argument? No, my argument Well, tell me which argument is that? My argument is that there were four separate factual baseses provided by four separate witnesses, and only one of them involved the discharge of a weapon. So the jury could have believed three of the other witnesses and convicted your client for, basically for drug trafficking, but only one of them would have supported the charge for the, that that was done in conjunction with the firing a firearm. I could see the jury sitting in there and saying, we don't believe Ray Blasek. Right. He gave a couple statements already, or, you know, the day of the incident, basically, never mentioned drugs whatsoever. And then he shows up, the, well, the agent's contacted him four days prior to trial, and then all of a sudden he sees drugs. So that's Judge Tashima's point, that you can't tell what the jury relied upon in convicting your client of drug trafficking, just distributing, I think it was methamphetamine. It was. Right. And there's just the one witness, I think Basak, who would have supported both. Right. Correct. Yeah. I, putting aside for a moment the Harris issue, which, of course, underpins a lot of this, but assuming arguendo, that the judge had the right to make the determination here under Harris, it seems to me the jury heard evidence that Lyra carried a firearm and in one evening shot at Basak. Whether people believe it or not, they heard that evidence. The jury found that Lyra had used or carried firearms in connection with drug trafficking in quotes, including but not limited to certain enumerated firearms. So it didn't exclude the one that he was found not guilty on. I mean, or rather, it could have included, but it wasn't named. Right. And it says including but not limited to. And at the sentencing hearing, the government presented evidence that a nine millimeter shell casing was found at the scene when Lyra allegedly shot at Basak. And finally, the judge made the finding that the discharged firearm, that Lyra had discharged firearm and applied the minimum sentence. So my guess, I guess my point is if the Supreme Court upholds the right of the judge to make the determination here, isn't there evidence based upon what I've just recounted here in a summary fashion to sustain the sentence? I don't think there was because under Harris, there's got to be a nexus between the offense, the drug trafficking offense, and the discharge of the firearm. Well, forgive me, counsel. I may be remembering the record incorrectly. But what I thought was that Basak saw him in the car with a packet of methamphetamine in his lap or something like that. And then he fired the gun at him. There was a dispute. Is that wrong? No, that is correct. The question was what firearm? And the jury didn't say exactly. But it did say that he had used a firearm including but not limited to. And then it listed three things other than the one that we're talking about here. But it didn't exclude it. When you say including but not limited to, the universe is broader than the named firearms. So I guess what I'm struggling with is that if the judge had that right, it seems to me even though the evidence may not be super, super, super strong, there was at least evidence that the judge, particularly taking into account the shell casing, could have said, okay, there is evidence that Mr. Lira had drugs on his lap. He shot at this guy. There's a shell casing to show the kind of gun that it was. The jury didn't eliminate the possibility that that firearm was used. It didn't name it, but it said including but not limited to. What am I missing? Well, my position is this, is that the discharge enhancement has to relate to a specific incident. It has to be during or in relation to? Correct. Drug offense. Correct. Now you're saying the mere fact that he had a ball of, what was it? Methamphetamine. Meth in his lap is not sufficient to support a finding during a drug offense? No, what I'm saying is that the jurors had the testimony of Tyler Marr, who specifically identified a weapon that was named in the superseding indictment. And they could have believed Tyler Marr and said, yeah, we believe Tyler because he said he saw Joe Lira with a .45 and a .380 handgun. And that could have formed the basis of the conviction. Or they could have believed Nick Kajetan, who also specifically identified one of the firearms named in the superseding indictment. But counsel, the confusion arises from the government's brief that presents your argument, I think incorrectly, as requiring the jury to determine which firearm was used. So you're seeking sort of, there was an argument about a machine gun enhancement or something. And, in fact, the question is, which incident did the jury rely upon? Isn't that right? Yes. Because, as Judge Tsushima said, we have to know that the firearm was used or brandished or discharged in conjunction with a drug deal, for lack of a better phrase. And so I think, for me, the briefing got confused. But I just want to raise this so you have an opportunity to respond. And I'll ask government's counsel as well. But, to me, the briefing got confused because the government seemed to be misconstruing your argument as though the jury needed to make some kind of a special finding about which firearm. Yeah, that's my, I have the same impression. Is that what you're arguing? That, in other words, the jury has to identify which firearm was used? Well, under the instructions, they had to make a unanimous determination about what firearm was used. So, that's not an issue. They convicted him of the offense. So, obviously, they made that determination. Right. Then, in your view, tell us in just 25 words or less, what is the issue? The issue is that there were four separate incidents that could have provided a basis for the jury to find him guilty. And in three of the four, there wasn't a discharge. So, there's no enhancement. That's the issue. And we don't know which incident the jury relied upon to convict him, right? Correct. We only know which incident the judge relied upon to provide the sentencing enhancement. Correct. But if they convicted him of a discharge, doesn't that necessarily narrow the, you know, incident on which the jury relied? Well, they didn't convict him of the discharge because that's an enhancement. That's a finding made by the judge. Right. Which is why there's a 28-J letter. Right. So, but he was convicted of just that he was even carrying a firearm. In furtherance of the drug trafficking. Right. Okay. That's correct. All right. We're taking a little over time. We may give you a minute rebuttal when we hear from our distinguished counsel from the government. I got it now. Three incidents. Thank you, Your Honor, and good morning. My name is Leif Johnson and may it please the court for the United States. I want to get to this incident thing right away. Your Honor, the defendant was convicted of using or carrying a firearm during the entire period of the drug distribution. That was July 2007 to December of 2010. Now, there was evidence of various times from various people that he used and carried guns in relation to his drug offenses. And on one particular incident, that gun was fired. Now, that does not mean that the jury somehow settled on one person's testimony and didn't settle on another one. I mean, that's the great sausage grinder of justice. The jury found him guilty of using and carrying a firearm during this entire period. And in that period, there was a discharge. And what this case... Well, why do you say necessarily it's for the entire period? Because that was the charge. Did the instructions require that he be found guilty of carrying it during the entire period? Yes. What did it say in the instructions about the entire period? He was charged with using and carrying a firearm from July 2007 to December of 2010. And the instructions required the jury to find the elements that he used or carried the firearm in connection with the offense. So he had to carry a firearm every day during that entire period? Is that what you're saying? That's an element of the crime? What we're saying is it was a continuing set of criminal conduct. And the defendant used or carried firearms throughout that period of time to enforce his drug deals. And, Your Honor, I want to mention one thing here. I mean, one of the things that Mr. Lear is suggesting is that the government should have somehow restrictedly pleaded like this is active discharge. So we would know for certain, okay? But the problem with that is, is that it doesn't capture the use conduct. Discharge happens in an instant. Use occurs over a long period of time. And then when we start requiring the government to split up its charges, then we're going to have multiple 924C charges. And if they're based on different predicate conduct, that can result in multiple mandatory consecutive sentences, which the prosecutor here was trying to avoid. Well, you wouldn't have to. It seems to me the only curative step that would need to be taken is a specific finding about what evidence the jury's relying upon to decide that there was a discharge. And, in fact, that was what the court discussed in the Pina Lora case that we've cited in our briefs. And in that case, the court said, you know, defendant, if you wanted specific information from the jury on this, you should have proposed a specific instruction or a verdict form that would have basically set out, was a firearm used and was it discharged? And that would have settled the issue. But the court in Pina Lora, and we think it's good reasoning that the court ought to apply here, is that they said, look, the court could have used its discretion to do that if the defendant had asked. But the defendant didn't ask, just like Lira didn't ask here. And so the question was raised, was it even error? And if it was, it was plain error. And in that case, the court said, look, it was an error because the judge had to look at the entire evidence and decide for itself whether or not there was a firearm used and whether it was discharged. And the district judge made that finding. And it wasn't found to be plain error because there was evidence in the record that supported a, or there was a machine gun used in that case. In this case, the record clearly shows that there was a discharge. And that discharge was with a firearm that was obviously used. So it's hard to say there was plain error. I'm sorry. No, no. I'm sorry. Go ahead. Oh, please. I think you started first. But there was more than one firearm involved here, right? Yes. Now, it would be legally sufficient to sustain the guilty verdict on whatever that was, count four or five, if the jury found that the defendant had used or carried only one of them, right? That would be sufficient, wouldn't it? Yes. All right. So I think his argument is, and the one they could have found could have been the one that wasn't discharged. Isn't that his argument? They could have found all of them, Your Honor. I know they could have, but that's the problem. We don't know which one they relied on. It's exactly the case of Pina Lora. And the court said, look, the sentencing judge, if this is an enhancement, which it still is, he gets to step back and make that determination. Was it used? And was it discharged? He makes the entire determination. That gives, affects the language in the discharge enhancement that says, the firearm is discharged. But in that case, if you're talking about the firearm, there was indeed in that case a need to figure out which firearm, because then that was a type of enhancement because it was a machine gun. And we had to know if it was a machine gun that was used or discharged or if it was a different kind of firearm. But Judge Teshiman's talking about something very different. And I think his question is really going to be the nub of this case for me. So I hope you'll answer it. Sure. If the jury believed the three other witnesses, they could have convicted Mr. Lira, right? Yes. How do we know they didn't do that and didn't disbelieve Mr. Bosseck? Your Honor, I want to be direct here. If you're going to give the judge the authority to apply the sentencing enhancement, and if you're going to give the judge the ability to find facts relevant to that, then he's never going to know that for sure. He is going to know if only one firearm was charged in the indictment. But he's never going to know if the jury actually decided the case on that particular firearm. It has to be because there's only one firearm involved. No, no. There were multiple firearms. I'm saying if you have, you say the judge could never find it. I'm saying he could find it if only one firearm were involved in the case. Sure, sure. Just like the machine gun. There's only one machine gun involved in the case. Well, if we had, look, this enhancement shouldn't apply easier to a defendant who only uses one gun than it does to a defendant like Lira who uses multiple guns. The question is, was the defendant convicted of possessing the same gun that the judge relied on in the enhancement? Or was that a different gun? That's the question, isn't it? No, no. That's not the question. The question, if it's really going to be a sentencing enhancement, is the district judge has to decide the entire question separate. He has to say. Well, he can't because otherwise it wouldn't be an enhancement. It would be an independent crime. If he could base it on a different gun than the gun on which the jury convicted, it would not be an enhancement. It would be a separate offense. The judge has to look at the evidence and decide whether or not that firearm was, by sufficient evidence, used in the offense and discharged in the offense. That's the only way to give the enhancement effect to this language that we're talking about. No, it's not the only way. Well, the other way is to ask the jury with a special verdict form or, as Lira suggests, to specifically charge things. And our point is you can't specifically charge things to get around this problem. You just can't. And the only other solution is to give the jury a special verdict form. And that is the defendant's obligation. And on plain error, he doesn't win that question because the jury or because the judge clearly found that this firearm was used and it was discharged. I want to take a slightly different tack than my colleagues here. Under O'Brien, it seems to me that the Supreme Court acknowledged that there was almost an inherent conflict between having judges weigh sentencing factors and having juries make determinations about the elements of the crime. Yes. They'll decide what to do with it in this Allain case. But assuming for a moment that they don't strike Harris, in this case, does it matter that the jury didn't specifically rule out this firearm because it said including but not limited to. But by the same token, he wasn't convicted of using that particular firearm. Isn't this an independent regime, though, at least as it currently exists? In other words, unless the jury says no, then maybe that's different. But if the jury leaves the question open and we don't know which firearm was used, which is a thing that all of us struggle with to some degree, under Harris, at least, it seems like the judge is given the authority to independently weigh, by preponderance of the evidence, whether a firearm was used. In this case, the judge, I suppose looking at the 9-millimeter casing that was found, said, we've got this one witness, we've got this shell casing. In my view, if I were the judge, it meets the test here under Harris. I, therefore, find the enhancement. As the law currently stands, regardless of the answer to my colleague's question, does U.S. sentencing law permit the judge to do what he did? Yes. The judge has to find and give effect to the entire language of the enhancement, which was to say that this firearm was used and it was discharged. I mean, he's got to do that. And your point about O'Brien is actually a really good one, Your Honor, because the Supreme Court in O'Brien said, you know, discharge doesn't need to be in strict relation to the offense. Discharge can be accidental and it can occur sort of in the course of conduct and not strictly related. So you could conceive of a set of factors where a person on his way to a drug deal accidentally fires the gun, you know, into the ground. He gets the enhancement even though he's not even at the drug deal at this point, okay? So the Supreme Court has construed in relation to and in furtherance of for the underlying offense not to apply to the enhancement. So basically from the government's perspective, presumably under the O'Brien analysis, the Supreme Court recognizes that what the jury may do with respect to the elements of a charged crime is somewhat separate and apart from the enhancement process. All the judge needs to find, regardless of what the jury did, if there's a preponderance of the evidence to show that the elements of an enhancement are met, that's sufficient under Harris. Is that right? Exactly, Your Honor, because otherwise the court's role as the sentencing fact finder is completely lost. And it can be inherently contradictory because arguably the jury could have found something quite different. Yes. Or certainly weighed the evidence differently, as both of you have pointed out, and at least under Harris that is acceptable. Is that correct? That's our point, Your Honor. Our point is that the jury could have just sort of relied on the first gun they heard about. They could have just said, okay, we've got enough. We're going home. We're done. And that doesn't capture all the conduct. And clearly enhancing conduct under the sentencing guidelines, the court is charged with the responsibility of looking at the entire record. And given the difficulty that this sort of Harris conundrum that you've discussed, Your Honor, you have to rely on the district court to step back and make an honest view of the record and decide whether or not this is the type of activity that warrants the enhancement. That's what the court did here. It's clear that this gun was used. It's clear that this gun was discharged. And we think that this court has to defer at least under Harris while Harris still stands. I know it's not the clearest set of circumstances in the world. That's why, Your Honor, the briefing somehow gets a little bit crossways. But that's our position. But, again, the government doesn't oppose the concept that I mentioned when we first started, that our panel should await the outcome of the Allain case because, of course, we don't know what they're going to say. We don't know. And depending on what they say, it may completely dispose of this case. It may create new conundra of which we can barely fathom. You know, we just don't know what they're going to do. Yeah, we might have to plead and prove discharge in the future, Your Honor, and that would change the complexion of this case. So we would urge the court to hold an advance. Do any of my colleagues have questions of the government? Thank you very much. We'll give opposing counsel a minute to respond if you'd like. You don't have to, but if you'd like. I guess I'll just say one thing in relation to your questions to Mr. Johnson about Harris. And I think the position that the government takes is contrary to what Harris says. Harris says that an enhancement relates to the manner in which the crime was committed. That's why we have to know what incident he was convicted of, isn't it? Yes. I think that's all I have. And how do you weigh the impact of the reasoning in O'Brien? Doesn't that muddy your waters a bit? I'm not sure I know how to answer that question. You don't have to. I don't know. I honestly don't know. I think we can all agree the Supreme Court has created quite a little bramble bush. It's a good reason to re-hear Harris, isn't it? Indeed. Indeed. So we'll await that. Any other questions from my colleague? Thank you both for your argument. As I mentioned at the beginning, the panel is going to defer submission of this case for the time being. We'll have to reflect that on the record. We will await the outcome of the Elaine v. United States case on which certiorari has been granted from the Fourth Circuit. And once we know that, we will reconvene, probably electronically, and decide the case. But thank you both for your argument. Thank you.
judges: Tashima, Smith, Christen